People ex rel. Ballinger, Appellee and Cross-Appellant, v. Timothy J. O'Connor, Commissioner of Police of the City of Chicago, Stephen E. Hurley, Albert W. Williams and John J. Ahern, Members of the Civil Service Commission of the City of Chicago, James H. Dillard, Comptroller of Chicago, and William G. Milota, Treasurer of the City of Chicago, Appellants and Cross-Appellees.

Gen. No. 46,956.

First District, Second Division.
April 9, 1957.
Rehearing denied April 30, 1957.
Released for publication May 21, 1957.

318

319

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin and Brendan Q. O'Brien, Assistant Corporation Counsel and Harry H. Pollack, of counsel) for defendants-appellants.

Michael F. Ryan, of Chicago (Richard R. McPartlin, Jr., of counsel) for plaintiff-appellee and cross-appellant.

JUDGE McCORMICK delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county entered December 14, 1955, ordering a writ of mandamus to issue commanding the respondents to restore Robert E. Ballinger, petitioner, as a patrolman in the classified service of the Chicago police department and to pay him salary from Novem-

ber 21, 1953 to February 21, 1954. A cross-appeal was taken by the petitioner from the portion of the order with reference to the allowance of salary.

Respondents contend that petitioner is barred by laches from maintaining the suit; that the proceedings taken in the case were in accord with the Civil Service Act and the rules of the commission; that the matter before the trial court was an attempted review of a matter within the discretion of the department head and of the civil service commission and hence is not subject to review by the courts in a mandamus proceeding provided that the officers, as it is contended they did, acted within their statutory powers and not arbitrarily or capriciously.

Petitioner urges that there was no unreasonable delay in filing suit and that in any case he has a satisfactory excuse for the lapse of time involved; that the department head acted illegally in that he usurped the powers granted to the civil service commission since by his action he annulled the certification of eligibility by the commission; that the reason assigned by the commissioner as grounds for removing the petitioner was invalid and insufficient in law; that the civil service commission failed to give a valid or legal consent to the removal of petitioner since it conducted no investigation of any kind to determine the truth or falsity or relevancy of the assigned reason for removal.

The name of the petitioner was posted by the civil service commission on its eligible list on April 20, 1953, he having taken both mental and physical examinations. On September 18, 1953 he was certified by the commission for appointment to the position of patrolman, and on September 23, 1953 he was appointed by the commissioner of police as a patrolman and sworn in. Under the Civil Service Act and the rules of the commission he was appointed as a probationary police officer for a period of six months. Under the practice

321

of the Chicago police department, the chief surgeon of that department examined petitioner on September 30, 1953. After the examination the surgeon became suspicious of petitioner's lung condition. He then found that petitioner's questionnaire gave a history of tuberculosis. Further investigation revealed that the petitioner had on September 27, 1950 been rejected for military service on the ground of "pneumothorax pleural diffusion." The chief surgeon asked the petitioner to go to St. Luke's Hospital for a chest x-ray, and on October 12, 1953 the doctor received a report from the hospital. He thereupon wrote to the commissioner of police advising him to suspend petitioner because he was a potential risk. On November 10, 1953 the commissioner of police sent a communication to the civil service commission asking authority to discharge petitioner based on the report of the chief surgeon indicating a tubercular condition. The report of the chief surgeon, attached to the communication from the commissioner of police, recited that the petitioner had been admitted to the Municipal Tuberculosis Sanitarium March 4, 1945, that he was discharged September 10, 1946; that from March 18, 1946 to June 1, 1951 artificial pneumothorax was given on his left side; that an x-ray report dated October 12, 1953 from St. Luke's Hospital reads: "Old pathology in the left lung, adhesions in the left diaphragm. Thickening of the pleura and generalized thickening of the pleura of the entire lung. The upper lobe of the left lung is not well aerated, probably due to faulty breathing and thickened pleura"; and that because of the above findings and history of tuberculosis, he is a poor risk for the police department. The petitioner was then suspended and was discharged on November 21, 1953. He was not notified of the discharge. The instant suit was filed on November 1, 1954.

322

The court overruled the respondents' motion to strike the petition. Respondents filed an answer. A hearing was had before the court and at its conclusion the court entered the judgment from which these appeals are taken.

·Section 10 of the Act to Regulate the Civil Service of Cities (Ill. Rev. Stat. 1953, chap. 24½, par. 48) provides that the department head should notify the civil service commission of a position to be filled and should fill such place by the appointment of the person certified to him by the commission, which appointment shall be made on probation for a period to be fixed by the rules of the commission. The rules of the commission, section 5 of rule IV, provide that the period of probation shall be six months. The Act further provides that at or before the expiration of the period of probation the head of the department may, with the consent of the commission, discharge the probationer upon assigning in writing his reason therefor to the commission.

██ During the probationary period an appointee may be discharged upon complying with the Act without notice or hearing. Fish v. McGann, 205 Ill. 179 (in which case the court laid down the rule that the appointee is not in the classified service until the probation period has expired) ; Kenyon v. City of Chicago, 135 Ill. App. 227. The petitioner strenuously contends that since he had passed the physical examinations conducted by the civil service commission and was certified by it, this certification was binding on the department head, and if the department head could conduct a further physical examination it would mean that he would be taking over the right and duty which was by statute vested solely in the commission. There seems to be no question as to the right and power of the commissioner of police to, from time to time, conduct physical and mental examinations in order to

323

determine whether or not patrolmen are able to perform the duties required of them. People ex rel. Wayman v. Steward, 249 Ill. 311. It would seem to be an anomaly to hold, where an appointment of a police officer has been made on probation in order that it might be determined whether his conduct, capacity and physical condition are such as would enable him to assume the necessary duties of the office, that the hands of the commissioner of police are tied and he must, even if his investigation indicates that the probationer is not in his opinion qualified to perform his duties, still permit the probationer to go through his probationary period and enter into the classified service. In People ex rel. Walter v. Woods, 168 App. Div. 3, 153 N. Y. S. 872, the court held that the commissioner of police should not be deprived during the probationary period from making a thorough investigation into the applicant's personal records in order to determine whether he has the proper qualifications for a police officer, in spite of the fact that he has been certified by the civil service commission, and the court points out the civil service commission and examiners have not the facilities for making a thorough investigation or outside inquiries into his personal records.

The petitioner relies on the case of Wolff v. Hodson, 285 N. Y. 197, 33 N.E.2d 90, in which the court held that where an appointment had been made from the eligible list furnished by the civil service commission and where the appointee, a special investigator in the department of welfare, had held the position for more than a year, the civil service commission could not, without a hearing, arbitrarily remove him from his position. The ground advanced for such removal was that he had made false statements in his application. The basis for the court's opinion seems to be that the appointee was dismissed without a hear-

ing and that the civil service commission having certified him could not revoke the certification, and the court says that the appointing officer cannot question the determination of the commission as certified to him as to eligibility, even though the commission was in error. The statement in the opinion on which the petitioner relies is dicta; neither has it any application to the case before us, since here we are dealing with an appointee to the police department, a semi-military organization upon which is placed the duty of protecting the lives and property of the citizens of the city. The purpose of the probationary status of the appointee is to enable the commissioner of police, in his sound discretion, to determine as to whether or not the probationer has the necessary qualifications to become a police officer. It is well established that mandamus will not lie to review a discretionary act of an administrative agency, a department head, or the civil service commission. The only question presented to the courts is to determine whether or not the administrative body has acted within its defined powers, and if the court has determined that the action of the administrative body is outside of its powers, its resulting void order may be ordered expunged from its records. The court may, when it is the clear legal duty of an administrative body vested with discretion in the premises to act, compel by mandamus such administrative body to act, but the court may not compel such agency to act in any particular way. People ex rel. Elmore v. Allman, 382 Ill. 156; Reddick v. People ex rel. Mason, 82 Ill. App. 85. Here, as we have stated, the commissioner of police had the power to order an examination of the probationer. That examination was made, and the physician who made it came to the conclusion from the evidence before him that the probationer did not have the necessary physical qualifications to enable him to be a

policeman. The chief surgeon made his report to that effect to the commissioner of police and the commissioner, in accordance with the statute, requested the discharge of the probationer, which request was granted. It must be presumed that the public officials acted in good faith and with honest motives. Smith v. Board of Education, 405 Ill. 143; Michuda v. Sanitary District of Chicago, 305 Ill. App. 314.

■ On the hearing a physician testified in favor of the petitioner to the effect that the conditions indicated in his history, including the x-ray reports, did not render him a poor risk for the police department. The chief surgeon for the police department, together with another physician, testified that they did. The question was one of scientific fact on which qualified men could and did have a difference of opinion. Its determination was within the sound discretion of the commissioner of police, and in reaching a conclusion he was entitled to rely upon the opinion of his departmental medical officers. Neither the trial court nor this court in a mandamus action can substitute its judgment for that of the medical officer, the commissioner of police and the civil service commission. The action taken by them was not arbitrary or capricious.

■ Petitioner also urges that no valid consent was given by the civil service commission for his removal, and he argues that the letter from the department head to the commission, which stated that the petitioner had a tubercular condition, together with the report from the chief surgeon, was not sufficient inasmuch as it did not specifically set out a conclusion as to the petitioner's then existing physical condition; that there was no statement he was unable to perform his duties, simply that he was a poor risk for the police department; and that thereupon it became incumbent upon the civil service commission to make a further investigation before consenting to the discharge. We

know of no such rule of law. As we have stated, it must be assumed that the acts of the civil service commissioners were in good faith. The report of the police surgeon was comprehensible even to a layman and sufficient to justify the commission in giving its consent to the discharge of the petitioner; and in any case there is nothing in the record to indicate that the commissioners did not consult medical authorities with reference to the report. The fact that the letter from the department head did not state that the petitioner was unable to perform his duties is immaterial. The statements therein made were sufficient on which to base a discharge.

Another ground urged by the respondents is that the petitioner was barred by laches from bringing his mandamus action. The question was properly raised in the pleadings, both in the motion to strike and in the answer.

It has been held in cases where a petition for a writ of certiorari had been filed seeking to review the rulings of the civil service commission in regard to civil service employees that laches may properly be invoked. In Connolly v. Upham, 340 Ill. App. 387, a case involving the dismissal of a petition for a writ of certiorari, the court in its opinion reviewed and analyzed the cases of Clark v. City of Chicago, 233 Ill. 113, City of Chicago v. Condell, 224 Ill. 595, Blake v. Lindblom, 225 Ill. 555, People v. Burdette, 285 Ill. 48, and Carroll v. Houston, 341 Ill. 531, and concludes:

"There is no statute limiting the time within which a common-law writ of certiorari may issue, 'but the courts, by analogy, have established a limitation in regard to the issuing of such writs, the same as the limitation which governs the prosecution of a writ of error' (Clark v. City of Chicago, 233 Ill. 113), and have uniformly held that a party seeking to review the action of an inferior tribunal by the common-law

327

writ of certiorari must act promptly, and in case of delay must show, by his petition, some legal excuse why he has not moved more promptly.

"Since City of Chicago v. Condell, 224 Ill. 595 (1907), six months has been established as the limitation period during which the writ of certiorari must be filed, unless a reasonable excuse is shown for the delay."

In Schultheis v. City of Chicago, 240 Ill. 167, which was a petition seeking a writ of mandamus to order the petitioner's name restored to the police payroll, the court discusses and relies upon the case of Kenneally v. City of Chicago, 220 Ill. 485, where the court held that laches could be properly urged as a bar to the issuance of the writ. Answering the contention of the petitioner that laches cannot be relied on as a defense in a suit at law and can only be interposed in equity, the court says:

"This is a mistake. Cases are common in this court in which *laches* has been regarded as affording a defense in proceedings in *quo warranto* and in proceedings in certiorari, both of which are at law. Clark v. City of Chicago, 233 Ill. 113; City of Chicago v. Condell, 224 id. 595; People v. Hanker, 197 id. 409; Trustees of Schools v. School Directors, 88 id. 100; People v. Schnepp, 179 id. 305.

"In the case cited from the 233d we held that a member of the Chicago police force claiming to have been wrongfully removed would be barred by *laches* from his right to have the record of the civil service commissioners reviewed by certiorari if he delayed more than six months in beginning his suit unless the delay was satisfactorily explained by the petition for the writ. We are satisfied that we should adhere to the Kenneally case."

In People v. City of Chicago, 147 Ill. App. 591, which was a petition for a writ of mandamus directed against

328

a ruling of the civil service commission, the court cites Clark v. City of Chicago, supra, and, after stating that while the action in the Clark case was one of certiorari and the one before it one of mandamus, says:

"The cases are analogous for the end aimed at is the same, although the means differ simply in procedure through which the end is sought to be accomplished. The doctrine of laches, however, is as readily invokable in the one case as in the other. The court say in Clark case *supra:* 'The petition for the writ in this case was filed ten months after the petitioner had been removed from office, and as the petitioner makes no showing why said petition was not filed at an earlier date and within six months of the date of the entry of the order of removal by the Civil Service Commission, we think the appellee should be held to be barred, by reason of his laches, of his right to have said order reviewed by the common law writ of *certiorari,* and that the Superior Court did not err in quashing the writ and dismissing the petition.'

"These remarks are of equal force and pertinency to relator's petition for the writ of *mandamus,* for by this writ he is seeking the same review as Clark did by his *certiorari* proceeding."

In People ex rel. McNamara v. O'Connor, 12 Ill.App.2d 481, the court came to the same conclusion.

 It is apparent from these decisions that our courts have taken the view that the bar of laches applies both to certiorari and mandamus and that six months has been established as the limitation period during which petitions for such writs must be filed, unless a reasonable excuse is shown for the delay. In the case before us the petitioner urges that he has shown reasonable grounds for his delay in filing the petition.

The petitioner on September 23, 1953 was appointed a probationary patrolman. He was suspended November 11, 1953 and was subsequently discharged on No-

329

vember 21, 1953. He filed the instant suit November 1, 1954, a period of eleven months after he was discharged, and over nine months from the time he received the report from the Municipal Tuberculosis Sanitarium upon which he relies.

To explain the delay in filing the instant petition, petitioner relies on the fact that a few days after his suspension he talked to the chief surgeon, who told him that if he (petitioner) would bring him a clean bill of health, he (the surgeon) would see what he could do. The petitioner then went to the Municipal Tuberculosis Sanitarium, which made sputum tests, and on January 22, 1954 he was given a report of those examinations which he took to the secretary of the police department and asked that it be forwarded through the usual channels to the proper authorities. The contents of that report do not appear in the record, and if we assume that the report therein contained was substantially the same as is contained in the letter from the medical director of the Chicago Municipal Tuberculosis Sanitarium to Dr. Phillips dated December 1, 1955, it would state that the petitioner has been considered a minimal, inactive case of pulmonary tuberculosis since January 1954; that chest x-rays reveal some pneumothorax thickening of the pleura on the left side with obliteration of left costophrenic angles and some mediastinal displacement to the left; that slight fibroid residues are noted on the left side at the first and second interspaces. In that letter it was also stated that on September 29, 1955 the petitioner was in good physical condition. The petitioner states that he knew he was suspended on November 11th but received no notice of his discharge on November 21st and did not know that he had been discharged.

 The petitioner is an educated man. He had attended Loyola University for four years and the Chicago Kent College of Law for one semester. He

330

states that he had in October before his suspension entered on a course of treatment at the Municipal Tuberculosis Sanitarium, which ran to January 1954. He states that he did not know how long a suspension could stand before discharge; that after November 21st he got a paycheck from the police department for services which he had performed before the date of the discharge and that since then he had received no money. Complying with a request at the time of the suspension, he had turned in all his police equipment. Petitioner certainly knew that he was no longer a police officer. He argues, however, that he was lulled into doing what he did by the statement of the chief surgeon. It is inconceivable that a man of his intellectual capacity did not know the rules governing suspension and discharge from the police department, and in any case he cannot rely on his ignorance of the law. All the police surgeon told him was that if petitioner would furnish a clean bill of health he would see what he could do about the matter. After petitioner received the letter of January 22nd from the Municipal Tuberculosis Sanitarium he did not contact the surgeon, nor did he inquire as to whether or not the surgeon had ever received the letter. In any case, the letter, assuming that its contents were as we have suggested, could be construed as not being a "clean bill of health." It has been held that promises of a superintendent of police and a mayor to reinstate a policeman were not sufficient to excuse laches in a mandamus suit. McGowan v. City of Chicago, 178 Ill. App. 76; People ex rel. Jahn v. City of Chicago, 279 Ill. App. 624. Under these holdings it would seem evident that the very vague statement of the police surgeon in this case would not be sufficient.

There was a duty resting upon the petitioner under all the facts and circumstances to promptly assert his claim. We do not think that he has given a

331

sufficient excuse to satisfactorily explain his delay in filing the petition. The petition should have been stricken on the ground of laches. The cross-appeal of the petitioner is stricken. The judgment of the Superior Court of Cook county is reversed.

Judgment reversed.

ROBSON, P. J. and SCHWARTZ, J., concur.