Hillsborough
No. 6565

ROBERT CLARK v. CITY OF MANCHESTER & a.

May 31, 1973

*James M. Winston,* by brief and orally, for the plaintiff.

*J. Francis Roche,* city solicitor, by brief and orally, for the city of Manchester.

Kenison, C.J.   The issue for decision in this case is whether the dismissal of the plaintiff probationary police officer from the defendant city's police force was unlawful. Plaintiff was dismissed from the police department for failure to satisfactorily complete his one-year probationary period due to a non-job-related injury occurring in the eleventh month of the probationary period. The board of police commissioners dismissed plaintiff by letter dated February 11, 1972, and plaintiff appealed to superior court seeking to be reinstated as a police officer and for the recovery of back wages allegedly due him since his offer to return to work in November 1971. After hearing, the Court (*Loughlin,* J.) entered a decree for the defendant city and reserved and transferred the case to this court upon the plaintiff's exceptions.

Plaintiff was hired as a police officer by the city of Manchester on September 1, 1970. On July 9, 1971, he suffered a serious neck injury in an off-duty accident. He was hospitalized for one week and wore a cervical brace for some time thereafter. On November 2, 1971, plaintiff informed the police chief of his availability to return to duty and presented a note from his doctor indicating his ability to return to work as a police officer with no restrictions. A meeting was held before the police commission on November 26 at the request of plaintiff's counsel at which time the injury and plaintiff's doctor's report were discussed, and plaintiff was asked to submit a letter of clarification to the doctor's report. Plaintiff submitted a second report to the commission on December 29, 1971.

At a meeting on February 9, 1972, the board of police

commissioners voted to separate plaintiff from service in the police department "[b]ecause Officer Robert Clark for reasons of health has not satisfactorily completed his twelve month probationary period . . ." as required by the Manchester personnel policy ordinance. The plaintiff was notified of this decision by letter from Police Chief Stips on February 11, and appealed the decision to superior court. At the hearing before the court, the police commissioner who testified stated that plaintiff was dismissed upon the supposition that he was a probationary employee and because the commissioners concluded that he was not physically fit for duty. He further testified that there was concern over the psychological impact that such an injury might have upon a police officer in a stress situation and that there was concern over the potential financial responsibility of the city in the event that the injury were aggravated in the line of duty. The court found that "the plaintiff was a good police officer (which appears undisputed), and suffered no permanent residual injury" but ruled that no error or law was committed by the police commission in separating the plaintiff from the force.

Plaintiff's probationary period began on September 1, 1970, and ended on August 31, 1971. The purpose of a probationary period in public employment is to give the appointing authority an opportunity to observe and evaluate the employee's capacity, ability and willingness to perform his assigned tasks under actual working conditions in order that an intelligent and informed decision may be made at the end of the period on the employee's overall fitness for the particular job. *E.g., Plymouth School Dist. v. State Bd. of Educ.*, 112 N.H. 74, 78, 289 A.2d 73, 76 (1972); *State v. Memphis*, 224 Tenn. 180, 452 S.W.2d 346 (1970).

Section III (B) 1 of the Manchester personnel policy ordinance provides that the probationary period for policemen shall be twelve months in duration and "[i]n the event the employee does not satisfactorily complete his probationary period, he shall be separated from the service . . . ." This provision contemplates that the entire one-year probationary period must be completed by actual service before a probationary policeman may be appointed to a permanent position.

Here the plaintiff completed only 10½ months of actual service before his unfortunate accident. Under these circumstances, we think that for the plaintiff to have become tenured the police commission at the very least, would have had to make an affirmative determination first, that the plaintiff had successfully performed all of the duties normally falling within a full year's work and second, that the employee was fit in all respects to enter into the permanent force. In this case, while plaintiff had successfully completed the normal police duties over a substantial portion of the probationary period, he was not physically fit to be retained on the force in the judgment of the police commission. Consequently, he never successfully completed his probationary period nor became a tenured officer.

This conclusion is not altered by reason of §III (E) of the personnel policy ordinance providing that "[a]bsences on leave . . . shall not serve to interrupt continuous service" since the term "continuous service" as used in this section is a term of art which refers back to the immediately preceding section (III (D)) dealing with longevity rates and utilizing the phrase "employed continuously." This is consistent with the testimony of the personnel director of the city who drafted the ordinance, and we think that it is the most reasonable interpretation of the ordinance as a whole. Otherwise, virtually the entire probationary period could be eliminated in the event that a probationer received an emergency leave of long duration early in the probationary period. "With some exceptions, civil service laws and regulations do not apply to . . . probationary . . . employees . . . ." 4 McQuillin, Municipal Corporations §12.248, at 292 (3d ed. 1968); *Southland v. Town Council*, 108 R.I. 738, 279 A.2d 441 (1971). Nor did the city's mistaken payment to plaintiff of vacation pay, to which an employee is entitled only after having been in service for one year, operate as a waiver.

A probationary employee is entitled to neither a hearing nor to written reasons for his nonretention. While this is a harsh and often unjust rule (*see* Davis, Administrative Law Text §§16.07-.10 (3d ed. 1972)), which could be corrected by statute or ordinance, it is undoubtedly the law. "[T]he general rule [is] that, unless otherwise limited or restricted

by statute or ordinance, implicit in the power of a city or town to hire is the power to discharge at any time without notice and without necessity of written charges and hearing thereon." *Mitchell v. Eaton,* 491 P.2d 587, 588 (Colo. 1971); *accord, Adamczyk v. Caledonia,* 52 Wis. 2d 270, 190 N.W.2d 137 (1971). *See generally* 3 Antieau, Municipal Corporation Law §§22.22, 22.23 (Supp. 1972); 4 McQuillin, Municipal Corporations §§12.248a, 12.249 (3d ed. 1968); Annot., 131 A.L.R. 383 (1941). There was no applicable statute or ordinance entitling plaintiff to a hearing or written reasons for his nonretention. The Manchester ordinance, ch. 18, §5, providing that officers may be removed for just cause and after due hearing, does not apply to plaintiff since civil service laws generally do not pertain to probationary employees as discussed above. *See State v. Cooley,* 254 Ind. 453, 260 N.E.2d 598 (1970); *Southland v. Town Council,* 108 R.I. 738, 279 A.2d 441 (1971) (probationary policeman not retained after probationary period not entitled to benefit of hearing provision of ordinance); 4 McQuillin, Municipal Corporations §12.248, at 292 (3d ed. 1968).

The plaintiff's constitutional rights as a probationary employee have not been violated. *Board of Regents v. Roth,* 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); *Perry v. Sindermann,* 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). *"Roth* and *Sindermann* adhere to the principle that absent contractual, legislative or constitutional provision on the subject, the power of removal is incident to the power of appointment, and government employment can be revoked at the will of the appointing officer." *Harnett v. Ulett,* 466 F.2d 113, 117 (8th Cir. 1972). A probationary employee is thus ordinarily afforded no due process protection concerning his nonretention "unless a showing is made that the governmental conduct likely will (1) seriously damage his standing and associations in this community, (2) impose a stigma upon the employee that will foreclose future opportunities to practice his chosen profession," or (3) constitute a constitutionally proscribed action such as racial discrimination or free speech suppression. *Id.* at 116. "[A] subjective expectancy of employment is not protected by procedural due process." *Lukac v. Acocks,* 466 F.2d 577, 578 (6th Cir.

1972). None of the exceptions to the general rule are present in this case, and consequently plaintiff was entitled to neither a hearing nor to written reasons for his nonretention.

Plaintiff finally contends that his nonretention for reasons of health was arbitrary and unreasonable in view of the commission's failure to obtain another doctor's report when the reports of plaintiff's doctor specifically stated that plaintiff was fit to resume his full duties as a police officer. While the commission would have been better advised to have obtained another doctor's report corroborative of their concern over his physical fitness, we are not in a position to say that its decision on the basis of the two reports before it was devoid of reason. *E.g., Hood & Sons v. Boucher,* 98 N.H. 399, 101 A.2d 466 (1953). "The dismissal of a probationer must not be arbitrary, illegal, capricious or made in bad faith, but the courts will not interfere with a reasonable exercise of discretion by a department head or an administrative official." 4 McQuillin, Municipal Corporations §12.248a, at 294 (3d ed. 1968). While the doctor's reports submitted to the commission concluded that plaintiff was fit to return to duty, their references to possible future "numbness or weakness of his arms or legs" and the possibility that "the future might hold further surgical approach" could reasonably have created in the minds of the commissioners an aura of an uncertain health future. A police officer in a stress situation must be able to respond quickly and with agility in a manner demanding the full, unrestricted and uninhibited flection of all portions of the anatomy. It does not appear to be unreasonable for the commission to conclude that a police officer who must be "thoroughly educated regarding the nature of his [broken neck] injury," according to his own doctor, might not have a one hundred percent capacity to react properly in an emergency situation such that the safety of the public or a fellow police officer might be jeopardized.

The police commission's nonretention of the plaintiff was thus not arbitrary nor unreasonable. *People v. O'Connor,* 13 Ill. App. 2d 317, 142 N.E.2d 144 (1957) (whether probationary policeman was a poor health risk for commissioner's sound discretion); *Matter of Going v. Kennedy,* 5 App. Div. 2d 173, 170 N.Y.S.2d 234 (S. Ct. 1958), *aff'd,* 5 N.Y.2d 900,

183 N.Y.S.2d 81, 156 N.E.2d 711 (1959) (dismissal of probationary patrolman suffering from hypertension not arbitrary and capricious); *Hansen v. Kennedy,* 163 N.Y.S.2d 301 (S. Ct. 1957) (dismissal of probationary policeman whose heart condition might in the future develop problems according to only some of the doctors not unreasonable or arbitrary). The judgment of the superior court must be affirmed.

*Plaintiff's exceptions overruled.*

All concurred.