HERSCHEL FRANK KEARNS, Plaintiff-Appellant, *v.* BOARD OF
EDUCATION OF NORTH PALOS ELEMENTARY SCHOOL DISTRICT
NO. 117, Defendant-Appellee.

First District (2nd Division)    No. 78-1094

Opinion filed June 19, 1979.

Wilson and Schwartzman, of Chicago, for appellant.

John M. Berent & Associates, of Wheaton (John M. Berent, of counsel), for
appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, a tenured academic counselor employed by the defendant Board of Education of North Palos School District No. 117 ("Board"), brought suit in the circuit court of Cook County seeking invalidation of his 3½-day suspension without pay, expunction of this suspension from his records, and reimbursement of $304 in withheld pay. Plaintiff appeals an order entering summary judgment for the defendant contending that (1) he was statutorily entitled to a hearing before an impartial hearing officer prior to his suspension; and (2) that the Board's action violated his procedural due process rights and infringed his first amendment right of free speech. No question as to the Board's suspension is raised in this appeal.

On August 31, 1976, the plaintiff attended an Institute Day meeting at Conrady Junior High School where he was employed. On the same day, Charles Feigl, the superintendent of the school district, and the plaintiff were sent a memorandum from Joseph Dubec, the school's principal, charging the plaintiff with improper, insubordinate, and irrational conduct at the Institute Day meeting. The following day (September 1), the plaintiff and his teacher's representative met with assistant superintendent Tom Kostes and principal Dubec. At this meeting plaintiff was given an opportunity to defend and account for his actions. Following this meeting, the assistant superintendent notified the plaintiff by a memorandum dated September 1 that he was suspended for three days as of noon September 1, and that he could appeal the decision to the superintendent or to the defendant Board.

On September 7, plaintiff was notified by telegram of a special meeting to be held on that date by the defendant Board for the purpose of reviewing his suspension.[1] The telegram advised the plaintiff of his right to appear and be heard at the meeting with the representative of his choice. The plaintiff was also notified that if the Board determined that his suspension was improper, he would be reimbursed for all lost pay and his record would reflect that determination. Plaintiff attended the September 7 Board meeting with several representatives, one of whom was the general counsel for the Illinois Education Association. Although no witnesses testified under oath or were cross-examined and an informal atmosphere prevailed at that meeting, the plaintiff was given an opportunity to present proof and testimony of witnesses, and to explain, controvert, and rebut the administration's reports of defects in his conduct.

---

[1] This statement is based on the allegations in the plaintiff's complaint and a copy of the actual telegram dated September 7 attached thereto. We note, however, a letter entitled *TELEGRAM* dated September 2 from superintendent Feigl to the plaintiff was submitted in support of the defendant's motion for summary judgment.

The minutes of the September 7 meeting indicate the following action was taken:

"Mrs. Hodgson moved, Wanka seconded that the suspension without pay, of Mr. Frank Kearns be terminated as of tonight (Sept 7) and that Mr. Kearns be instructed to report to work in the morning (Sept. 8) * * * and that the following resolutions be adopted by the Board."

These minutes were subsequently amended at the Board's regular meeting on September 21 to read as follows:

"PAGE ONE-PARAGRAPH FOUR-should read:

'. . . . . that the suspension of 3½ days without pay be upheld, of Frank Kearns, and the suspension be terminated as of tonight September 7 . . . .' "

I.

Under section 10—22.4 of the School Code, a school board is given the power:

"To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and to dismiss any teacher, whenever, in its opinion he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24—10 to 24—15, inclusive." (Ill. Rev. Stat. 1975, ch. 122, par. 10—22.4.)

Section 24—11 of the School Code provides in pertinent part:

"This Section and succeeding Sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided. Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or removals." Ill. Rev. Stat. 1975, ch. 122, par. 24—11.

The procedure required when removal or dismissal is sought is in pertinent part as follows:

"[T]he board must first approve a motion containing specific charges by a majority vote of all its members. Unless the teacher within 10 days requests in writing of the board that no hearing be scheduled, the board shall schedule a hearing on those charges before a disinterested hearing officer on a date no less than 30 nor more than 60 days after the enactment of the motion. Written

notice of such charges shall be served upon the teacher at least 21 days before the hearing date. Such notice shall contain a bill of particulars. The secretary of the school board shall forward a copy of the notice to the State Board of Education. Within 10 days after receiving this notice of hearing, the State Board of Education shall provide a list of 5 prospective, impartial hearing officers. Each person on the list must be accredited by a national arbitration organization. No one on the list may be a resident of the school district. The Board and the teacher or their legal representatives within 5 days shall alternately strike one name from the list until only one name remains. * * * The per diem allowance for the hearing officer shall be paid by the State Board of Education and may not exceed $250. * * * The teacher has the privilege of being present at the hearing with counsel and of cross-examining witnesses and may offer evidence and witnesses and present defenses to the charges. * * * All testimony at the hearing shall be taken under oath administered by the hearing officer. The hearing officer shall cause a record of the proceedings to be kept and shall employ a competent reporter to take stenographic or stenotype notes of all the testimony. The costs of the reporter's attendance and services at the hearing shall be paid by the State Board of Education. * * * If in the opinion of the board the interests of the school require it, the board may suspend the teacher pending the hearing, but if acquitted the teacher shall not suffer the loss of any salary by reason of the suspension." Ill. Rev. Stat. 1975, ch. 122, par. 24—12.

## A.

The plaintiff first argues that the power to dismiss or remove given in section 10—22.4 must be construed to include the power to suspend thereby entitling him to the procedural requirements of section 24—12. Although we recognize that this argument has been recently accepted by the Third District Appellate Court in *Craddock v. Board of Education*, ___ Ill. App. 3d ___, ___ N.E.2d ___ (No. 77-482, filed March 26, 1979), we find the reasoning of the dissent in that case to be more persuasive.[2]

---

[2] Relying on *Goldsmith v. Board of Education* (1924), 66 Cal. App. 157, 225 P. 783, the *Craddock* majority stated that dismissal must be construed to mean not only the power to permanently dismiss but also to temporarily dismiss or suspend (*Craddock*, ___ Ill. App. 3d ___, ___). The issue in *Goldsmith* was whether the statutory causes for dismissal also provided a legal basis for the plaintiff's ten-week suspension. The *Goldsmith* court did not consider whether the procedural protections afforded those subject to dismissal should also be afforded those subject to suspension.

Moreover, we do not believe that the legislature intended the majority's construction of the word "dismiss" to include "suspend." We are of the opinion that if the legislature had

As stated therein by Mr. Justice Alloy:

"This lengthy and costly procedure which the legislature established in Section 24—12 is commensurate with the degree of loss which is at stake for the tenured teacher facing dismissal or removal. Both loss of salary and permanent loss of position as a tenured teacher in the school system is at stake for the teacher facing dismissal or removal. If the legislative objective was otherwise, it could easily have so stated in the Act. It must be emphasized that Section 10—22.4 speaks only of dismissal and Section 24—12 only of dismissal or removal. Both sections, by their plain meaning, clearly contemplate permanent termination of employment.

What is at stake in the instant case is not dismissal or removal. What is at stake is only a 3 day disciplinary suspension from duties and a loss of pay for those three days. * * * While the complex and costly procedures of Section 24—12 make sense in the context of dismissal or removal, the same procedures border on the ridiculous when forced into the context of a school board's temporary disciplinary suspension, for as little as one day, of a teacher for an infraction of its rules and regulations. Application of Section 24—12's requirements in the latter context can only serve to affect detrimentally the board's ability to control and manage the school, by making it inordinately costly and time-consuming to deal with relatively minor infractions of its rules and regulations.

To conclude, * * *, that the requirements of Section 24—12 must be employed in the instant case ignores the plain language of the statute, the obvious difference in the degree of sanctions involved, and the interest of the school board in effective management and government of the schools." *Craddock*, ___ Ill. App. 3d ___, ___.

Concluding that the power to suspend is not an outgrowth of section 10—22.4, and recognizing that this power is not expressly granted anywhere in the School Code, Mr. Justice Alloy continued:

"Section 10—20.5 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—20.5) imposes upon the Board the duty: 'To adopt and enforce all necessary rules for the management and government of the public schools of their district.' * * * There is implied in this obligation to make rules and regulations, and to enforce them, a power in the board to mete out discipline to those who violate the rules and regulations. * * * If that were not the case, the power to

intended such a construction it would have expressly included the term "suspension" in sections 10—22.4 and 24—12 as it has done in many other similar statutes. See, *e.g.*, Ill. Rev. Stat. 1977, ch. 121, par. 307.13; Ill. Rev. Stat. 1977, ch. 24½, par. 91.

make rules would indeed be a hollow one and effective management and government could not be accomplished. Thus, it is from this section of the school code that the power to make temporary disciplinary suspensions arises." *Craddock,* ___ Ill. App. 3d ___, ___.

■■ Adopting this reasoning, we hold that neither section 10—22.4 nor section 24—11 entitled plaintiff to the procedural requirements of section 24—12. See also *Englebrecht v. Hudson* (N.D. Ill. 1979), Memorandum Opinion and Order No. 77-C-429.

In our opinion, if the legislature intended suspensions to be treated the same as dismissals, it would have said so. It is difficult to accept plaintiff's reasoning that by not using the term "suspension" the legislature intended to include such action within the word "dismissal." However, the Board's action must also be evaluated in light of the plaintiff's due process right to a hearing commensurate with the degree of sanction sought to be imposed.

## B.

Before plaintiff was suspended or any pay was withheld, plaintiff was notified of the charges by both the assistant superintendent and the superintendent of the school district. Plaintiff was then given an opportunity to defend and account for his actions, and to explain or rebut these charges not only at the meeting with the assistant superintendent but also at the hearing before the Board. At the latter hearing, the plaintiff was represented by counsel and was given an opportunity to present witnesses and proof.

The incident involving the plaintiff took place at two meetings being conducted on August 31, 1976, by the principal of the school in which plaintiff was employed. The assistant superintendent of the school district suspended the plaintiff on September 1, 1976, after a meeting with plaintiff because of "improper conduct at two meetings 8/31/76 and insubordination to Joe Dubec, Principal Conrady Jr. High." At the September 1 meeting, plaintiff was given "an opportunity to give an account, defend or justify his actions before the suspension was initiated." Here the original action was taken by the assistant superintendent, not the school board. Thereafter on September 7, upon notice to the plaintiff, a meeting was held at which time the plaintiff was afforded a hearing. Thereafter the board upheld the suspension without pay and ordered the plaintiff reinstated. This is not a case where the school board was the prosecutor and the judge. (*Cf. Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593.) Nor is this a case where the school board took the action, as in a dismissal, which it thereafter reviewed.

■■ Moreover, the plaintiff does not allege any facts showing a high probability of actual bias by the Board which adversely affected its decision-making process. Therefore, the fact that the Board conducted the hearing after investigating the charges does not render the Board's action constitutionally infirm. See *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 494, 49 L. Ed. 2d 1, 96 S. Ct. 2308; *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 155-56, 365 N.E.2d 322; *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 320, 388 N.E.2d 398.

■■ Under these circumstances, we are of the opinion that the procedural protections afforded the plaintiff—notice, a hearing, an opportunity to be heard—satisfied the requirements of due process. See *Goss v. Lopez* (1975), 419 U.S. 565, 577-84, 42 L. Ed. 2d 725, 95 S. Ct. 729; see also *Linwood v. Board of Education* (7th Cir. 1972), 463 F. 2d 763, 769-70, *cert. denied* (1972), 409 U.S. 1027, 34 L. Ed. 2d 320, 93 S. Ct. 475.

## II.

Despite compliance with the requirements of due process, plaintiff may still establish a claim if the Board's decision to suspend him was improperly predicated on the exercise of his first amendment rights. *Mt. Healthy City School District Board of Education v. Doyle* (1977), 429 U.S. 274, 283-84, 50 L. Ed. 2d 471, 481, 97 S. Ct. 568, 574.

According to principal Dubec's memorandum, he had been repeatedly interrupted by the plaintiff at the morning session of the Institute Day meeting, despite the fact that he had told the plaintiff that he was not recognizing questions from the floor and that he would discuss the matter with him later personally. When the plaintiff persisted, he ordered him to go to his office. The plaintiff then approached him and asked whether his office was air-conditioned and had a chair for him. He again directed the plaintiff to his office. Although he was not in the office when the principal arrived, the plaintiff returned to the afternoon session of the meeting. The principal's memorandum, attached as an exhibit to assistant superintendent Kostes' affidavit, relates that at the close of that session, the plaintiff screamed and ran up the center aisle of the library in a threatening and disruptive manner.

The plaintiff does not dispute the sequence of events. However, he alleged and argues here that he merely inquired about the health and safety conditions of the room to which he had been assigned and requested a certificate from the fire department. The plaintiff further contends that principal Dubec's memorandum could not be considered by the court since it was not a sworn affidavit and since Kostes, the affiant, could not testify to the facts related therein competently.

■■ ■ First, the sufficiency of an affidavit must be tested either by a

motion to strike the affidavit (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497) or by a motion to strike the motion for summary judgment setting forth the objections to the affidavit (*Anderson v. Dorick* (1975), 28 Ill. App. 3d 225, 228, 327 N.E.2d 541). Having failed to file either of such motions, plaintiff cannot challenge the sufficiency of this affidavit for the first time on appeal. (*Fooden*, at 587.) Moreover, by filing counteraffidavits in reply to the defendant's motion for summary judgment, plaintiff thereby admitted the sufficiency of the defendant's motion and affidavit. *Grant v. Reilly* (1952), 346 Ill. App. 399, 411-12, 105 N.E.2d 316.

Secondly, it is well established that public officials in the performance of official acts are presumed to act in good faith and with honest motives. (*Hortonville*, 426 U.S. 482, 497, 49 L. Ed. 2d 1, 11-12, 96 S. Ct. 2308, 2316; *Smith v. Board of Education* (1950), 405 Ill. 143, 148, 89 N.E.2d 893; *People ex rel. Ballinger v. O'Connor* (1957), 13 Ill. App. 2d 317, 326, 142 N.E.2d 144.) Although the plaintiff in his brief states that "he criticized the Administration in a polite and respectful manner," this interpretation of his conduct is unsupported by any pleading, exhibit, or affidavit in the record. Moreover, plaintiff conceded in oral argument before this court that the principal had the authority to ask him to leave the meeting if his conduct was disruptively interfering with the meeting. Therefore, the defendant's well-pleaded facts establishing plaintiff's disruptive conduct and the presumptive validity of the Board's action on the basis of these facts stand unrebutted. Under these circumstances, we find the plaintiff's argument that his suspension infringed his first amendment rights is without merit.

Finding no merit in the plaintiff's contentions that the Board's action was either procedurally or substantively invalid, we therefore affirm the summary judgment for the defendant and find it unnecessary to consider the plaintiff's contention that the trial court erred in denying his motion for judgment on the pleadings.

Affirmed.

PERLIN and HARTMAN, JJ., concur.