EDET INWANG, Plaintiff-Appellee and Cross-Appellant, *v.* COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK, Defendant-Appellant and Cross-Appellee.

First District (5th Division)   No. 82—2660

Opinion filed August 26, 1983.

Murray and Girard, Ltd., of Chicago (Michael J. Murray and Richard E. Girard, of counsel), for appellant.

Gilbert Feldman, of Chicago, for appellee.·

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from a summary judgment in a *mandamus* action ordering defendant to reinstate plaintiff to his position as a faculty member at Malcolm X College upon termination of a 30-day suspension with the right to salary and benefits commencing after that period. Defendant contends that the trial court erred in ruling (a) that rules adopted by the board of trustees of Community College District No. 508 (the Board) did not authorize a suspension in excess of 30 days, and (b) that plaintiff did not waive any objection to the sanction imposed by failure to raise his claim at the hearing before a Board-appointed committee. In his cross-appeal, plaintiff maintains that the trial court erred in sustaining a 30-day disciplinary suspension.

On May 17, 1982, plaintiff, a tenured faculty member at Malcolm X College, was notified by the chancellor of the city colleges that the president of Malcolm X College had recommended his suspension for cause, alleging that he signed two certificates of attendance attesting that faculty member Michael Moduthgam was present and working when he knew or should have known that Moduthgam in fact was absent without leave for three weeks. On May 25, the Board appointed a three-member special committee to conduct a hearing on those charges and plaintiff was notified of his right to be heard and to be represented by legal counsel or any representative of his choice. At that hearing, witnesses for the administration testified that Moduthgam, a tenured faculty member of the department of natural sciences at Malcolm X College, was to begin his teaching duties for the

1981 fall semester on August 20, 1981, but did not report for work until September 14, 1981. Nevertheless, certificates of attendance submitted for the periods August 24 through September 4 and September 7 through September 18 indicated that Moduthgam was present, and he was paid based on those certificates. The witnesses testified further that each certificate was signed by plaintiff as acting department chairman and verified that Moduthgam was present, although plaintiff learned as early as the week of August 27 that Moduthgam was out of the country. On September 16, 1981, plaintiff was notified that no changes were to be made in the certificates pending an investigation of the incident, but he thereafter submitted corrected certificates. Witnesses for plaintiff supported his testimony that he did not learn of Moduthgam's absence until the week of September 7 and was never told that corrected certificates should not be submitted. On July 27, 1982, the Board adopted the committee's recommendation that plaintiff be suspended without pay for one semester effective August 20, 1982. The Board subsequently denied plaintiff's written demand, made within 10 days of its decision, that a hearing be held before an independent hearing officer pursuant to section 3B—4 of the Public Community College Act (Ill. Rev. Stat. 1981, ch. 122, par. 103B—4) and Board Rule 2—21(b)(1) or before an arbitrator pursuant to the terms of the collective bargaining agreement between defendant and the Cook County College Teachers Union.

Plaintiff thereafter brought the present action for a writ of *mandamus*,[1] alleging that the Board had not promulgated rules authorizing the sanction imposed; that a Community College District is not empowered to promulgate rules for the imposition of disciplinary suspensions; and that, even if such rules may be adopted pursuant to the powers vested in the Board by the Public Community College Act, they must provide for a hearing before an independent hearing officer.[2] Defendant moved for summary judgment, maintaining that its properly adopted rules, as interpreted by the Board, authorized the disciplinary sanction imposed and denying that plaintiff had a right to a hearing before an independent hearing officer or an arbitrator. The

---

[1]It is undisputed that the Board's action is not subject to review under the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*) but may be reviewed through an action for writ of *mandamus*. See *Maas v. Board of Trustees* (1981), 94 Ill. App. 3d 562, 418 N.E.2d 1029.

[2]Plaintiff also argued that, if the trial court found that he was not entitled to a writ of *mandamus*, he would be entitled to amend his complaint and seek a review of the Board's action under a common law writ of *certiorari*; however, he never sought leave to amend his complaint.

trial court ruled that the Board had authority, pursuant to the Public Community College Act, to promulgate rules for the suspension of employees, but that the rules adopted did not authorize a suspension in excess of 30 days.[3] It ordered plaintiff reinstated after a 30-day suspension, and this appeal followed.

OPINION

■ Defendant first contends that the trial court erred in ruling that it had no power to suspend plaintiff for a period exceeding 30 days. It admits that under *Craddock v. Board of Education* (1980), 81 Ill. 2d 28, 405 N.E.2d 794, no disciplinary suspension may be imposed in the absence of a rule authorizing that action, but maintains that the trial court should have deferred to its interpretation of sections 2—1(a) and 2—21(a) of the Board's Rules for the Management and Government of the City Colleges (hereinafter Rules 2—1(a) and 2—21(a)). It argues that the Board has continuously read these rules to mean that it reserves to itself the right to suspend an employee in excess of 30 days, while empowering the chancellor to impose suspensions of 30 days or less.

Administrative rules and regulations are to be construed under the same standards which govern the construction of statutes (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dickson* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87), and an agency's interpretation of a rule, as distinguished from the rule itself, is considered persuasive rather than binding on a reviewing court (*LaThrop v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. Ct. 2818; *Howard v. Miller* (1982), 108 Ill. App. 3d 1, 438 N.E.2d 680); however, an agency's interpretation of its rules will be accorded deference unless it is clearly erroneous, arbitrary or unreasonable (*Winnetkans Interested in Protecting the Environment (WIPE) v. Pollution Control Board* (1977), 55 Ill. App. 3d 475, 370 N.E.2d 1176).

Defendant initially contended in its answer filed before the trial court and in its brief in support of the motion for summary judgment that Rule 2—21(a) alone "has been continuously and repeatedly inter-

---

[3]The chancellor originally recommended that plaintiff be suspended for 60 days, but the resolution adopted by the Board imposes a suspension without pay for one semester. Although there is nothing in the record before us to indicate the length of a semester, we assume that it is in excess of 30 days, since neither party has contended otherwise and it appears that the order of the trial court constituted a reduction in the penalty originally imposed.

preted *** to mean that the Board of Trustees reserves to itself the right to determine, after notice and hearing, whether an employee should be suspended for a period exceeding thirty days." Rule 2—21(a) provides:

"The Chancellor may suspend any employee without pay not to exceed thirty (30) days as a disciplinary measure. Where reasonably possible prior to the suspension, the employee shall be notified of the charge and be afforded the opportunity to be heard before a committee or designee appointed by the Chancellor. The committee or designee shall make a finding and a recommendation to the Chancellor as to any appropriate disciplinary measure to be taken. In the event suspension occurs before said hearing, the employee must be afforded the opportunity to have such a hearing as soon as reasonably possible after the effective date of the suspension."

We note that this rule makes no mention of the reservation of powers to impose sanctions in excess of those specifically set forth. We find this language clear and unambiguous, and therefore not open to interpretation, whether judicial or administrative. An agency has no power to misapply or extend an unambiguous rule through strained interpretation. (See *Hetzer v. State Police Merit Board* (1977), 49 Ill. App. 3d 1045, 365 N.E.2d 261.) If the Board thought more stringent disciplinary measures should be authorized, it could have added them by the simple expedient of amending the rule; instead, it asks us, in effect, to amend the rule by adopting its interpretation.

Defendant further asserts, however, that its interpretation is supported by the above rule when considered in conjunction with Rule 2—1(a), providing that "[t]he Chancellor has the responsibility of recommending to the Board the appointment, retention, tenure, promotion, transfer, suspension and dismissal of all personnel." We are somewhat puzzled by defendant's belated reliance on Rule 2—1(a), first raised by it in its reply to plaintiff's brief in opposition to the motion for summary judgment, in the light of its assertion here that the rule is an integral part of its "long-standing interpretation." Nevertheless, we have considered its argument that the trial court's interpretation of its rules renders meaningless Rule 2—1(a), requiring the chancellor to recommend suspensions to the Board, because Rule 2—21(a) authorizes him to act without consulting the Board. In essence, defendant asks us to do what *Craddock* prohibits, namely, imply from Rule 2—1(a) a power which its plain language does not grant. This rule is contained in an article entitled "Administrative Organization and Personnel" and describes the duties of the office of chancellor. It

makes no mention of the powers of the Board, nor does it set forth any procedures which the Board must follow in acting upon a recommendation for suspension. We also note that Rule 2—1(a) further states that the chancellor shall have the duty to recommend the dismissal of employees, yet Rule 2—21(b) sets forth in great detail the procedures to be followed in dismissing various categories of employees, and specifically provides that the Board has the authority to dismiss. It appears, then, that the Board has not otherwise interpreted Rule 2—1(a)'s description of the duties of the chancellor as also containing authorization for its actions. For these reasons, we believe that the Board's alleged interpretation of Rules 2—1(a) and 2—21(a) is both erroneous and arbitrary, and the trial court did not err in failing to defer to it in interpreting Rule 2—21(a) according to its plain language.

■ Defendant next maintains that plaintiff has waived any objection to the sanction imposed by failing to raise the issue at the hearing. While we agree that an objection to the failure to follow procedural requirements may be waived by a failure to raise it before the Board (see *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398), we believe that, in the instant case, no such waiver occurred. Initially, we note that, while a 60-day suspension was recommended, no sanction was actually imposed until the Board acted on the committee recommendation over one month after the hearing. Once an agency promulgates rules and regulations implementing a statute, it is bound to adhere to them as long as they remain in effect. (*Illinois Bell Telephone Co. v. Allphin* (1981), 95 Ill. App. 3d 115, 419 N.E.2d 1188; *Holland v. Quinn* (1978), 67 Ill. App. 3d 571, 385 N.E.2d 92.) In order to object at the hearing, plaintiff would have had to anticipate that the Board would fail to follow its own rules at some future date.

Furthermore, the issue here involves not just a procedural requirement, but the Board's authority to impose the sanction in question in the absence of a rule specifically authorizing its action. In *Craddock*, the plaintiff contended, not that the school board had failed to adopt a rule authorizing suspensions, but that such rules were not permitted by the Illinois School Code (Ill. Rev. Stat. 1981, ch. 122, par. 1—1 *et seq.*). (*Craddock v. Board of Education* (1979), 76 Ill. App. 3d 43, 391 N.E.2d 1059.) Nevertheless, despite the plaintiff's failure to raise the issue in his appeal, let alone in the hearing before the Board, the supreme court held that the school board had no power to impose a disciplinary suspension in the absence of a rule authorizing that action. (81 Ill. 2d 28, 31, 405 N.E.2d 794, 796.) It appears, then,

that the absence of a rule is not a procedural matter subject to waiver, but a question of the power of the Board to act, a jurisdictional matter which cannot be waived. *Cf. Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 451 N.E.2d 1282.

In his cross-appeal, plaintiff contends that the trial court erred in sustaining a 30-day disciplinary suspension, arguing first that the Board is not empowered to promulgate rules for the imposition of suspensions in the absence of express authorization thereof in the Public Community College Act. (Ill. Rev. Stat. 1981, ch. 122, par. 101—1 *et seq.*) However, plaintiff abandoned this argument in his reply brief, stating that he "does not challenge the right of a Board to adopt rules providing for suspension short of dismissal." Therefore, we need not address this issue, but note that *Kearns v. Board of Education* (1979), 73 Ill. App. 3d 907, 392 N.E.2d 148, is dispositive thereof. There, we held that, although the Illinois School Code does not specifically grant school boards the power to impose disciplinary suspensions, the authority to do so was necessarily included in the duty of school boards "[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district." (Ill. Rev. Stat. 1975, ch. 122, par. 10—20.5.) The identical duty is imposed upon Boards of Trustees by section 3—25 of the Public Community College Act, *i.e.*, "[t]o adopt and enforce all necessary rules for the management and government of the colleges of its district." (Ill. Rev. Stat. 1981, ch. 122, par. 103—25.) In the absence of any indication of a contrary intention on the part of the legislature, we believe that section 3—25 of the Public Community College Act should be interpreted in the same manner as section 10—20.5 of the Illinois School Code, and that it similarly empowers the Board to promulgate rules for the imposition of disciplinary suspensions.

■ Plaintiff further contends that the trial court erred in failing to remand the action to the Board with directions that it grant his request for a hearing before an independent hearing officer, relying on *Craddock v. Board of Education* (1979), 76 Ill. App. 3d 43, 391 N.E.2d 1059. In *Craddock*, it was held that a school board's power to impose disciplinary suspensions derived from its power to dismiss, and therefore required that the same statutorily prescribed procedures be followed in suspensions as in dismissals, including the appointment of an independent hearing officer. Plaintiff acknowledges that this court expressly rejected the rationale of *Craddock* in *Kearns v. Board of Education* (1979), 73 Ill. App. 3d 907, 392 N.E.2d 148, holding that a temporarily suspended teacher was not entitled to procedures applicable to dismissal, and that a hearing before the school

board satisfied due process requirements. Nevertheless, he asks that we reconsider that ruling and adopt the rationale in *Craddock*, at least where a suspension in excess of seven days is involved.

Defendant maintains that plaintiff waived this question by his participation, without objection, in the hearing before the committee appointed by the Board. We agree. Unlike jurisdictional defects, procedural requirements may be waived by a failure to object. (See *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398; *Feldman v. Board of Trustees* (1982), 108 Ill. App. 3d 1127, 440 N.E.2d 147.) Furthermore, it is our view that the failure to appoint an independent hearing officer in cases involving suspensions for an extended period of time does not violate due process rights in the absence of an allegation that the Board hearing the evidence is biased. In *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, the supreme court held that due process requirements did not disqualify a school board from deciding the dismissal of a teacher, a sanction even more serious than suspension. (See also *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308; *Barszcz v. Board of Trustees* (N.D. Ill. 1975), 400 F. Supp. 675, *affirmed* (1976), 539 F.2d 715, *cert. denied* (1977), 429 U.S. 1080, 50 L. Ed. 2d 801, 97 S. Ct. 827.) Similarly, the supreme court held in *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398, another case involving dismissal of a teacher after a hearing before the school board, that administrators are presumed to be fair and unbiased in the absence of a showing to the contrary. Here, plaintiff has not alleged any bias on the part of the committee which heard the evidence or the Board which adopted its recommendation. In the absence thereof, we do not believe the plaintiff's right to a fair hearing was violated in the light of the record before us. He was given adequate notice of the charges against him, was represented by legal counsel, and had the opportunity to cross-examine administration witnesses and to present evidence and witnesses in his own behalf.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

WILSON, P.J., and LORENZ, J., concur.