DANIEL J. CRADDOCK, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF ANNAWAN COMMUNITY UNIT SCHOOL DISTRICT NO. 226 OF HENRY COUNTY, Defendant-Appellant.

Third District   No. 77-482

Opinion filed March 26, 1979.—Supplemental opinion filed on denial of rehearing July 26, 1979.

ALLOY, J., dissenting.

Allen D. Schwartz and Lorence H. Slutzky, both of Robbins, Schwartz, Nicholas & Lifton, Ltd., of Chicago, for appellant.

Robert W. Deffenbaugh, of Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellee.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

The action underlying this appeal sought to invalidate the three-day suspension of a tenured teacher without pay for cursing a student. The plaintiff schoolteacher, Daniel J. Craddock, was granted a summary judgment by the trial court, from which the defendant, Board of Education of Annawan Community Unit School District No. 226 of Henry County, Illinois, has appealed.

It is an uncontested fact that the plaintiff, employed by the defendant as a teacher and football coach, called a student a "son of a bitch." Slightly more than one week later, the defendant suspended the plaintiff for three days without pay but delayed the effective date of that action until notice of the suspension was given to the plaintiff, which notice additionally informed him of his right to request and perfect a review of the suspension before the school board. The plaintiff requested such a review and, at the hearing, challenged the jurisdiction of the defendant to suspend teachers for disciplinary reasons. After making this objection, the plaintiff refused to participate in the hearing and the defendant, hearing the matter *ex parte*, declared the plaintiff suspended for three days without pay.

■■ Although the Illinois School Code (Ill. Rev. Stat. 1977, ch. 122) does not expressly authorize a school board to suspend a tenured teacher, a school board does have the authority to dismiss or remove such a teacher as long as the procedure set out in section 24—12 (Ill. Rev. Stat. 1977, ch. 122, par. 24—12) is followed. These procedural requirements, including notice and hearing before an independent hearing officer, must also be complied with for a school board to reduce a teacher's salary in the absence of a uniform reduction of salaries (Ill. Rev. Stat. 1977, ch. 122, par. 24—11). There is in fact an absence of any source of legislative authority in other sections of the Code to suspend.

■■ ■ While statutes granting powers to school boards must be strictly construed, a school board has those powers expressly conferred and such powers as may be necessary to carry into effect those expressly granted. (*Wesclin Education Association v. Board of Education* (5th Dist. 1975), 30

Ill. App. 3d 67, 331 N.E.2d 335.) "Dismissal," as used in section 24—12, must be, therefore, reasonably and justly construed to mean not only the power to permanently dismiss but also to temporarily dismiss or suspend. The purpose of the statute is to provide a school board with the authority to effectively administer and manage its schools and the only sensible construction of the statute, to be harmonious with the purpose of effective administration, is that some actions by teachers, though unprofessional, socially unacceptable and arguably within the causes for dismissal listed in section 10—22.4 (Ill. Rev. Stat. 1977, ch. 122, par. 10—22.4), require punishment of a lesser degree than permanent dismissal. See *Goldsmith v. Board of Education* (3d Dist. 1924), 66 Cal. App. 157, 225 P. 783.

To conclude that suspension or temporary dismissal, though derived from the power of dismissal in section 24—12, can be exercised as power without compliance with section 24—12 procedure is illogical. The results of even a temporary dismissal are a permanent loss of some salary and a black mark on the tenured teacher's record and teaching abilities. This creates a stigma which certainly affects the teacher's future employment opportunities. In this case, the section 24—12 procedure was not followed. The purpose of the tenure act is to afford tenured teachers procedural safeguards when their livelihood or tenured status is threatened and to avoid insecurity of employment based on political, partisan or capricious considerations. (*McNely v. Board of Education* (1956), 9 Ill. 2d 143, 137 N.E.2d 63.) It would be irresponsible and violative of the underlying purpose of the tenure act to allow a school board or administrator, for political, partisan or capricious reasons, to harass a teacher into quitting through imposition of repeated payless suspensions that could be for weeks or months, and cannot be classified as temporary. Furthermore, the purpose of the amendment to the tenure act requiring an independent hearing officer is to avoid inequities which may result from a school board hearing and deciding a case in which they had already made an initial decision to discipline the teacher, having passed a motion containing specific charges against the teacher. (*Hagerstrom v. Clay City Community Unit School District No. 10* (5th Dist. 1976), 36 Ill. App. 3d 1, 343 N.E.2d 249.) A school board can not be both antagonist and judge and still provide due process to the teacher. *Miller v. Board of Education* (1st Dist. 1964), 51 Ill. App. 2d 20, 200 N.E.2d 838.

The defendant contends that they were sufficiently impartial to provide due process even though the hearing did not comply with the procedure required by section 24—12. They cite to us two cases which are inapplicable. *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729, is a student disciplining case, rather than a teacher disciplining case, which is not regulated by statute, and *Hortonville Joint School*

*District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308, is a decision based upon Wisconsin law as determined by the highest court of that state. In addition the defendant refers to *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, to support the contention that the board was sufficiently impartial to make a judgment. Although in *Gilliland* the new independent hearing officer provisions were not strictly complied with, a hearing officer was appointed, and the Illinois Supreme Court decided not to find an improper tribunal absent a clear showing of actual prejudice.

■■ In the case at bar, no hearing officer was appointed. This is clearly in violation of the procedures established by section 24—12. An independent hearing officer ought to have been appointed to determine whether the facts as presented at the hearing require permanent dismissal, temporary dismissal or no disciplinary action whatsoever.

Accordingly, the judgment of the Circuit Court of Henry County is affirmed.

Affirmed.

STOUDER, J., concurs.

Mr. JUSTICE ALLOY, dissenting:

I must respectfully dissent from the majority opinion in this cause. I do not believe that the procedure sanctioned in section 24—12 of the School Code is required to be employed in this case involving a 3-day suspension. No consistent construction of the Act requires that such procedure be employed. It is important, at the outset, to emphasize that the only issue before this court is whether the Annawan School Board was required to employ the full panoply of procedural elements set out in section 24—12 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—12) before it suspended Craddock for three days without pay. No question as to the merits of the board's suspension decision is raised in this appeal.

In addressing the issue raised, the majority opinion correctly notes that the School Code expressly grants a school board the authority to dismiss a teacher. (Ill. Rev. Stat. 1975, ch. 122, par. 10—22.4.) Under that section, the board is given the power:

> "To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and to dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24—10 to 24—15, inclusive * * *."

When removal or dismissal is sought under section 10—22.4, section

24—12 (Ill. Rev. Stat. 1975, ch. 122, par. 24—12) mandates certain procedures which must be followed before dismissal can be accomplished. In pertinent part, that section provides that:

"* * * the board must first approve a motion containing specific charges by a majority vote of all its members. Unless the teacher within 10 days requests in writing of the board that no hearing be scheduled, the board shall schedule a hearing on those charges before a disinterested hearing officer on a date no less than 30 nor more than 60 days after the enactment of the motion. Written notice of such charges shall be served upon the teacher at least 21 days before the hearing date. Such notice shall contain a bill of particulars. The secretary of the school board shall forward a copy of the notice to the State Board of Education. Within 10 days after receiving this notice of hearing, the State Board of Education shall provide a list of 5 prospective, impartial hearing officers. Each person on the list must be accredited by a national arbitration organization. No one on the list may be a resident of the school district. The Board and the teacher or their legal representatives within 5 days shall alternatively strike one name from the list until only one name remains. The teacher shall have the right to proceed first with the striking. The State Board of Education shall promulgate uniform standards and rules of procedure for such hearings. The per diem allowance for the hearing officer shall be paid by the State Board of Education and may not exceed $250. The hearing officer shall hold a hearing and render a final decision. The hearing shall be public at the request of either the teacher or the board. The teacher has the privilege of being present at the hearing with counsel and of cross-examining witnesses and may offer evidence and witnesses and present defenses to the charges. The hearing officer may issue subpoenas requiring the attendance of witnesses and, at the request of the teacher against whom a charge is made or the board, shall issue such subpoenas, but the hearing officer may limit the number of witnesses to be subpoenaed in behalf of the teacher or the board to not more than 10. All testimony at the hearing shall be taken under oath administered by the hearing officer. The hearing officer shall cause a record of the proceedings to be kept and shall employ a competent reporter to take stenographic or stenotype notes of all the testimony. The costs of the reporter's attendance and services at the hearing shall be paid by the State Board of Education. Either party desiring a transcript of the hearing shall pay for the cost thereof. If in the opinion of the board the interests of the school require it, the board may suspend the teacher pending the hearing,

but if acquitted the teacher shall not suffer the loss of any salary by reason of the suspension.

Before setting a hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges. The hearing officer shall, with reasonable dispatch, make a decision as to whether or not the teacher shall be dismissed and shall give a copy of the decision to both the teacher and the school board. The decision of the hearing officer is final unless reviewed as provided in Section 24—16 of this Act. In the event such review is instituted, any costs of preparing and filing the record of proceedings shall be paid by the board.

If a decision of the hearing officer is adjudicated upon review or appeal in favor of the teacher, then the trial court shall order reinstatement and shall determine the amount for which the board is liable including but not limited to loss of income and costs incurred therein." (Ill. Rev. Stat. 1975, ch. 122, par. 24—12.)

This lengthy and costly procedure which the legislature established in section 24—12 is commensurate with the degree of loss which is at stake for the tenured teacher facing dismissal or removal. Both loss of salary and permanent loss of position as a tenured teacher in the school system are at stake for the teacher facing dismissal or removal. If the legislative objective was otherwise, it could easily have so stated in the Act. It must be emphasized that section 10—22.4 speaks only of dismissal and section 24—12 only of dismissal or removal. Both sections, by their plain meaning, clearly contemplate permanent termination of employment.

What is at stake in the instant case is not dismissal or removal. What is at stake is only a 3-day disciplinary suspension from duties and a loss of pay for those three days. The majority opinion fails to adequately recognize the significance of this difference. While the complex and costly procedures of section 24—12 make sense in the context of dismissal or removal, the same procedures border on the ridiculous when forced into the context of a school board's temporary disciplinary suspension, for as little as one day, of a teacher for an infraction of its rules and regulations. Application of section 24—12's requirements in the latter context can only serve to affect detrimentally the board's ability to control and manage the school, by making it inordinately costly and time-consuming to deal with relatively minor infractions of its rules and regulations.

To conclude, as the majority opinion does, that the requirements of section 24—12 must be employed in the instant case ignores the plain language of the statute, the obvious difference in the degree of sanctions involved, and the interest of the school board in effective management

and government of the schools. It is illogical to conclude that the procedural protections designed for dismissal situations were intended by the legislature to also apply to temporary disciplinary suspensions of a nature as that in the instant case. The Supreme Court's well-established due process rule, that procedural protections must be given which are commensurate with the extent of possible deprivation involved (*Goss v. Lopez* (1975), 419 U.S. 565, 578-79, 42 L. Ed. 2d 725, 95 S. Ct. 729), emphasizes the importance and relevance of the sanction to be imposed.

The majority opinion reasons that the power to dismiss given in section 10—22.4 and governed by section 24—12 must be construed to include the power to temporarily suspend. The opinion then concludes that since the power to suspend is a lesser-included power of the power to dismiss, therefore, that procedural requirements for dismissal must also be granted in suspension cases. The error in this reasoning is in locating the origin of the power to suspend under section 10—22.4, which speaks only to the dismissal of teachers. The power to suspend a teacher for disciplinary reasons is not an outgrowth of that section. Neither is it a power which is expressly granted to the school boards anywhere in the Code. However, as the majority opinion notes, a school board has those powers expressly conferred and such powers as may be necessary to carry into effect those powers expressly granted. Section 10—20.5 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—20.5) imposes upon the Board the duty:

> "To adopt and enforce all necessary rules for the management and government of the public schools of their district."

If the Board is to adequately manage and govern, as it is obligated to do by this section, the rules and regulations which it adopts, for teachers and students and other personnel, must have some means of enforcement which are effective. There is implied in this obligation to make rules and regulations, and to enforce them, a power in the board to mete out discipline to those who violate the rules and regulations. Enforcement envisions effective sanctions of some sort. If that were not the case, the power to make rules would indeed be a hollow one and effective management and government could not be accomplished. Thus, it is from this section of the School Code that the power to make temporary disciplinary suspensions arises.

In the instant case, the board had promulgated certain rules and regulations governing the conduct of students and teachers in the school. The record indicates, and there appears no dispute of this fact, that Daniel Craddock, after having been informed that profanity directed at the students was unacceptable behavior for a teacher, did continue to use profanity in addressing a student in that he called the student a "son of a bitch." The School Board found that Craddock's behavior toward the

student violated rules and regulations requiring teachers, among other things, (1) to behave in a professional manner, (2) to set a proper example for students, and (3) to be fair, pleasant and considerate in their attitudes toward students. The merits of that decision are not before us. It then suspended Craddock for 3 days and directed a loss of salary for those 3 days. We note that the effective date of the suspension was postponed until after Craddock had been given notice of the intended suspension and time to respond before the full board. The board's action was in pursuance of the enforcement of its promulgated rules and regulations, and the power it possessed to suspend the teacher for disciplinary reasons is one which is implied in its mandate to make and enforce rules and regulations for the management and government of the schools. Ill. Rev. Stat. 1975, ch. 122, par. 10—20.5.

The procedural requirements set out in section 24—12 apply only when removal or dismissal is sought. They are not tied to section 10—20.5 and the board's power to enforce its own rules and regulations. They are not applicable in the situation where a school board exercises its enforcement powers by temporarily suspending a teacher for breach of the rules and regulations. While section 24—12's procedures do not apply, and while no specific catalog of procedures is set out in the statute for persons facing temporary disciplinary suspension, it is clear that such persons have due process rights, ones which are commensurate with the degree of sanction sought to be imposed upon them.

In the instant case, prior to the effective date of the suspension, Daniel Craddock was afforded notice of the charges and informed of his right to request and perfect a review of the suspension before the board. Craddock did so and a hearing was scheduled at which the teacher was represented by counsel and allowed to present testimony. He chose not to do so but rather to challenge the jurisdiction of the board. The hearing was held on September 25, 1975, and at its conclusion the board suspended Craddock, effective September 29, 1975, for a period of 3 days without pay. The protections afforded Craddock in this case, which included notice, right to review, right to counsel and right to present evidence, were commensurate with the degree of deprivation involved, the loss of 3 day's salary, and, therefore, satisfied the requirements of due process. *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729.

The majority opinion seems to intimate that the Board's position as judge at the hearing, after having made the initial decision to suspend, violates due process requirements. The majority opinion would appear to require the introduction of an independent hearing officer in cases of temporary disciplinary suspensions, even though, as we have noted, they are not covered by section 24—12. In *Gilliland v. Board of Education*

(1977), 67 Ill. 2d 143, 365 N.E.2d 322, a school board had requested a teacher's resignation. When the teacher refused to resign, the board gave her written notice that she was being dismissed for cause. The teacher then requested a hearing on the charges. At the conclusion of the hearing, in which the board had acted as prosecutor, witness and fact-finder, the board decided to dismiss the teacher. The procedures for dismissals under section 24—12 at that time did not require an independent decision maker. In upholding the board's action, the Illinois Supreme Court held that due process did not disqualify the board from serving as decision maker in the dismissal hearing. It noted, with approval, the United States Supreme Court's opinion in *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308, stating:

> "*Hortonville* held that Federal due process requirements did not disqualify a school board from deciding to terminate a teacher's employment where the board had been involved in earlier events upon which its present decision was based." (*Gilliland*, at 155.)

If due process did not disqualify the board in making the decision to terminate employment, as in *Gilliland*, it is illogical to conclude that it disqualifies a school board from deciding to merely suspend a teacher temporarily for 3 days for disciplinary reasons.

The majority opinion distinguishes *Gilliland* on the basis that a hearing officer was appointed by the board, although such was not required at that time by statute. However, it is of crucial significance that the hearing officer appointed only presided at the hearing. The decision was in the hands of the school board which had made the initial decision to dismiss and which had brought charges. The due process attack mounted in *Gilliland* was focused upon the board's role as prosecutor and as judge, a role similar to that of the board in the instant case. The court, as noted, found no due process violation. In addition, the opinion in *Gilliland* cites, with approval, two appellate decisions in which due process arguments of a similar nature were rejected. *Fender v. School District No. 25* (1st Dist. 1976), 37 Ill. App. 3d 736, 347 N.E.2d 270; *Hagerstrom v. Clay City Community Unit School District No. 10* (5th Dist. 1976), 36 Ill. App. 3d 1, 343 N.E.2d 249.

The majority opinion cites *Miller v. Board of Education* (1st Dist. 1964), 51 Ill. App. 2d 20, 200 N.E.2d 838, in support of its due process arguments. In *Miller*, however, there was a strong showing in the record of actual prejudice and unfairness in the conduct of the hearing. (*Miller*, at 38-41.) The decision in *Miller* is in accord with the rule enunciated in *Gilliland* which requires a showing of actual prejudice and unfairness to support denial of due process claims which are based upon allegations of a board's partiality. (*Gilliland*, at 156.) In the instant case there is no

evidence in the record to indicate that the board acted unfairly in the conduct of the hearing. There is no showing made of actual prejudice resulting from the board's position at the hearing as decision maker and interested protagonist. There was no due process violation established in the record. An independent hearing officer was not required by statute, nor was one mandated by the requirements of due process.

For the reasons stated, I believe the decision of the Circuit Court of Henry County should be reversed.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE BARRY delivered the opinion of the court:

The appellant, Board of Education of Annawan Community Unit School District No. 226 of Henry County, Illinois, has filed a petition for rehearing in this case which we deny, believing that our original disposition of this case is correct. The appellant has, however, raised several questions in its petition for rehearing which demand some additional comment.

The appellant contends that the recently decided case of Lester Englebrecht *et al.* v. Don Hurson *et al.* (No. 77—C—429, N.D. Ill. March 17, 1979), supports its argument that a temporary suspension of a tenured teacher does not require a hearing under section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12). We have carefully examined both the result and the rationale of the Englebrecht case. Contrary to the determination we have made, the Federal District Court in Englebrecht failed to find any statutory basis for the power of the school board to suspend a teacher. Its conclusion, then, that a hearing before an independent hearing officer was not required, was undoubtedly based on its finding that there is no power to suspend, and thus is not supportive of appellant's position. We adhere to the reasons we recited earlier in deciding that the statutory authority for a temporary suspension was derived from section 24—12 of the School Code.

The appellant's petition for rehearing also presented to us transcripts of the debates on section 24—12 of the School Code in the Illinois House of Representatives and Senate. These debates did not mention whether suspension is included within the concept of dismissal or termination as the law was drafted. Moreover statements of a few legislators in a floor debate would not in itself affirmatively establish the intent of the legislature. (See *Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 390 N.E.2d 847.) We find the appellant's reliance on the debates to support its position to be unpersuasive.

The appellant Board of Education also urges us to reconsider our holding in light of the recent Illinois Supreme Court decision of *Grissom*

*v. Board of Education* (1979), 75 Ill. 2d 314. Appellant argues that *Grissom,* insofar as it holds that the dismissal of a teacher by a school board acting in both an investigatory and adjudicatory capacity does not deprive the dismissed teacher of due process, is applicable to this case. Appellant further argues that *Grissom's* reliance upon *Gilliland* and *Hortonville* constitutes a rejection by the supreme court of our interpretation of those cases. We disagree. Like *Hortonville* and *Gilliland,* *Grissom* is factually distinguishable from the situation involving Craddock. *Grissom* involves a teacher *dismissed* pursuant to a procedure then in effect which did not require the appointment of an independent hearing officer (Ill. Rev. Stat. 1973, ch. 122, par. 24—12). In addition, the dismissal procedure in *Grissom* was attacked on constitutional grounds, whereas in Craddock's case we are dealing with the issue of statutory compliance. Our finding that *Hortonville* and *Gilliland* are inapplicable to the instant case is unaffected by the *Grissom* decision.

The appellant makes the assumption in his petition that we rejected its argument that the Board of Education was impartial. On the contrary, we did not reject the appellant's allegation of impartiality in the majority opinion. However, neither did we accept it. The Board may very well have acted without "bias, prejudice, or hostility" toward Craddock, but his argument only emphasizes the correctness of our analysis and the need for section 24—12 safeguards in the case of suspensions. It is true, as the supreme court pointed out in *Grissom,* that " 'state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances" ' " (75 Ill. 2d 314, 320, 388 N.E.2d 398, 400, quoting *Withrow v. Larkin* (1975), 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728, 95 S. Ct. 1456, 1468), but we are not so naive as to expect that such conscience and impartiality will be exercised in every single situation where a school board sits in judgment of an employee. We can easily envision situations where the school board is not impartial, and exhibits the kind of hostility, prejudice and bias the appellant contends was nonexistent in its suspension of Craddock. The possibility of such an occurrence demands that section 24—12 safeguards apply to suspensions as well as to permanent dismissals.

In support of the position of our majority opinion is the recent case of *Taylor v. State Board of Education* (1978), 56 Ill. App. 3d 387, 372 N.E.2d 129. There the appellate court held that when the dean of students was reassigned to the position of a teacher with an accompanying reduction in salary, sections 24—11 and 24—12 of the School Code, which required a hearing by an independent hearing officer and other procedural safeguards afforded to tenured teachers, were necessarily applicable. The reasoning set forth in the *Taylor* opinion buttresses our view of the

applicability of sections 24—11 and 24—12 of the School Code to this case. In *Taylor* the court concluded that it was the transfer of the former tenured teacher, then administrator, back to a teaching job with the resulting salary reduction that triggered the application of the procedural safeguards of sections 24—11 and 24—12 of the School Code. The loss of pay in the present case only strengthens our resolve in the applicability of section 24—12 to the "temporary discharge" of Craddock.

■■ Our view of the teacher tenure provisions of the School Code coincides with the court in *Taylor*. We reiterate that the purpose of the procedural safeguards granted to tenured teachers by the School Code is to insulate them from arbitrary and capricious actions of their employer when their livelihood or tenured status is threatened. The legislature in its wisdom has struck this compromise between the conflicting interests of labor and management in the public school system for the obvious policy reasons of maintaining quality education in our Illinois schools. We will not alter the sensitive balance of interests legislatively created.

Petition for rehearing denied.

STOUDER, J., concurs.

Mr. JUSTICE ALLOY, dissenting as to supplemental opinion:

I have expressed my views as to the disposition of this cause in my dissenting opinion to which I adhere and, consequently, do not join in the majority opinion or the supplemental opinion filed in this cause.