Norman JONES, Plaintiff,

v.

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 211, COOK COUNTY, ILLINOIS and Richard C. Kolze, Defendants.

No. 86 C 4660.

United States District Court, N.D. Illinois, E.D.

Dec. 15, 1986.

Mildred F. Haggerty, Poltrock & Giampietro, Chicago, Ill., for plaintiff.

John H. Hager, John M. Collins, Jr., Elaine K.B. Siegel, Hager & Collins, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Norman Jones ("Jones") sues his employer, Board of Education of Township High School District No. 211 ("Board"), and Board's Superintendent of Schools Richard Kolze ("Kolze") under 42 U.S.C. § 1983 ("Section 1983"). Jones' "Section 1983 claim" asserts his three-day suspension without pay by Board and Kolze violated his rights under the Fourteenth Amendment. Jones' "state law claim" charges Board's teacher suspension policy (the "Policy," Kolze Aff. Ex. A) violates Ill.Rev. Stat. ch. 122, ¶ 24–12 ("Section 24–12") and Ill. Const. art. VII, § 8.

Defendants have moved (1) for summary judgment on the Section 1983 claim under Fed.R.Civ.P. ("Rule") 56 and (2) to dismiss the state law claim under Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order, defendants' motion is granted.

*Facts* [1]

Under the Policy (adopted by Board January 29, 1981), Kolze as Superintendent may suspend an employee for cause, and the suspended employee is then entitled to a hearing to review the reasons for the suspension. After the hearing Board can either affirm the Superintendent's decision or reverse that decision and award the improperly suspended employee back pay (Kolze Aff. ¶¶ 15–16).

Jones is employed by Board to teach physical education at Hoffman Estates High School. On February 5, 1986 [2] he was involved in an incident in one of his physical education classes, after which a student complained that Jones had used excessive physical force against him. [3] Principal Dennis Garber ("Garber") and his Assistant Principal immediately began an investigation of the charge, interviewing the complaining student and several other students who were present when the incident occurred (Garber Aff. ¶¶ 6–9). Garber then notified Jones of the charges and met with him shortly thereafter to explain the charges and to give Jones the opportunity to present his side of the story. Jones admitted using physical force but denied it was excessive (*id.* ¶ 11). Jones and the students who were interviewed also submitted written statements to Garber (*id.* Exs. A–J).

Garber reported the results of his investigation to Kolze, who decided to suspend Jones without pay for what Kolze termed "grossly unprofessional and uncontrolled" conduct. Kolze explained his decision to Jones in a February 10 letter, in which he detailed the alleged "gross misconduct" and also informed Jones of his right under the Policy to an evidentiary hearing (Kolze

---

1. This recitation of facts is drawn from the parties' submissions. Of course any inferences reasonably to be drawn from the established facts are viewed in the light most favorable to Jones as the nonmovant. *Falconer v. Meehan,* 804 F.2d 72, 75 (7th Cir.1986).

2. Because all relevant events occurred in 1986, further date references in this opinion will omit the year designation.

3. Board's June 20, 1978 policy on corporal punishment and physical force (Jones Aff. Ex. B)

Aff. Ex. B). Jones was suspended without pay from February 11 through 14.[4]

Jones asked for a hearing on his suspension (*id.* Ex. C). Kolze promptly set a February 28 hearing date and designated Charles L. Mueller ("Mueller"), a Board administrator, to preside (*id.* Ex. D). At the hearing (which occupied the afternoons of February 28 and March 6) Jones was represented by counsel, was allowed to cross-examine Board's witnesses and also called witnesses of his own. All proceedings were taken down by a court reporter. After the hearing Mueller submitted a report in which he summarized but did not comment on the evidence presented by both sides (Mueller Aff. Ex. B). Board then upheld Kolze's decision to suspend Jones.

### Due Process and Summary Judgment Analysis

Jones now charges defendants' actions violated the Due Process Clause—a procedural rather than substantive due process claim, *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1262 (7th Cir.1985). In particular Jones claims defendants failed to:

1. give Jones a pre-suspension hearing;
2. comply with Section 24–12; and
3. give Jones an adequate post-suspension hearing.

Of course defendants do not dispute the threshold requirement that Kolze's suspension of Jones, and Board's upholding of that suspension, represented "state action" for Fourteenth Amendment purposes. Instead they mount a dual attack on Jones' Section 1983 claim:

1. They say their actions did not deprive Jones of a constitutionally significant liberty or property interest.
2. Even if such an interest were implicated, they say they gave Jones all the process due him.

*Bowyer v. United States Department of Air Force,* 804 F.2d 428, 430 (7th Cir.

1986) (citations omitted) has just repeated long-familiar doctrine relevant to defendants' Rule 56 motion:

> Summary judgment is properly granted only when no genuine issues exist as to any material facts and the moving party is entitled to judgment as a matter of law. . . . A [district] court examines the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the party opposing the motion.

As the discussion in this opinion reflects, Jones does succeed in establishing the existence of a property interest, and he also identifies several factual disputes as to defendants' alleged due process violation. But the property interest brings Jones only halfway home, and the factual disputes are not material—not "outcome-determinative" (*Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984)). Even on Jones' version of the disputed facts, defendants gave him all the process he was due under the Fourteenth Amendment.

### Jones' Property Interest

■ Defendants acknowledge Jones' property interest in the three days' pay he lost because of his suspension. They argue, however, that interest was de minimis: not significant enough to trigger Due Process Clause protection (see *Goss v. Lopez,* 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975)). To that end they point to *Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270, 272 n. 1 (6th Cir.1985) (per curiam), which found a two-day suspension without pay to be de minimis. This Court declines to follow *Carter* in that respect, both because Jones has potentially suffered more of a loss than three days' pay and because *Carter* is difficult to reconcile with other Fourteenth Amendment cases.

---

allows teachers to use minimal physical force in certain situations.

**4.** Jones' suspension was for only three working days, because Lincoln's Birthday (February 12) was a school holiday.

Besides his loss of pay, Jones' suspension has at least arguably placed a black mark on his employment record and his reputation in the community (see *Craddock v. Board of Education of Annawan Community Unit School District*, 76 Ill.App.3d 43, 45, 29 Ill.Dec. 376, 378, 391 N.E.2d 1059, 1061 (3d Dist.1979), *aff'd on other grounds*, 81 Ill.2d 28, 39 Ill.Dec. 815, 405 N.E.2d 794 (1980)). That is especially so because of the reason for Jones' suspension: excessive use of physical force. True enough, such damage to reputation would not alone satisfy the "stigma plus" standard for a constitutionally protected *liberty* interest (see *Paul v. Davis*, 424 U.S. 693, 709–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976), with its gloss on *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). But the *combination* of Jones' liberty and property losses merits due process protection (cf. *Paul*, 424 U.S. at 710, 96 S.Ct. at 1165, explaining *Goss*, 419 U.S. at 574–75, 95 S.Ct. at 736–37).

Even on the less favorable assumption that Jones' only deprivation was his property interest in three days' pay, this Court is unprepared to characterize such a deprivation as de minimis as a matter of law. Though a good deal of criticism has properly been leveled at trivializing the Fourteenth Amendment, at least in quantification terms *Parratt v. Taylor*, 451 U.S. 527, 529, 101 S.Ct. 1908, 1910, 68 L.Ed.2d 420 (1981) (where plaintiff's property interest was valued at $23.50 and was nonetheless held entitled to Section 1983 protection) remains intact.

Thus Jones' claim survives first-level scrutiny—the existence of a cognizable property or property-plus-liberty interest. However, the relative importance of that minimal interest is relevant to the remaining questions: what process was due to Jones before and after defendants deprived him of his protected interest.

### *Pre-Deprivation Due Process*

██ Due process requires a meaningful opportunity to be heard before the final deprivation of a protected interest by state action, *Mathews v. Eldridge*, 424 U.S. 319, 333–34, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In most cases that meaningful opportunity must precede the deprivation, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1493 & n. 7, 84 L.Ed.2d 494 (1985), but "something less than an evidentiary hearing is sufficient prior to adverse administrative action" (*Mathews*, 424 U.S. at 343, 96 S.Ct. at 907). To determine what procedures the Due Process Clause mandates for a specific deprivation, a court must balance the competing interests of the government and the private individual, *id.* at 334–35.

*Loudermill* recently performed just such a balancing in a situation quite similar to Jones'. There the Board of Education had fired a security guard for alleged dishonesty in filling out his employment application. Unlike Jones, Loudermill was given no opportunity to be heard before he was fired, although he was entitled to an administrative review of the decision after he lost his job. Such a total lack of pre-deprivation procedures violated Loudermill's due process rights because (*Loudermill*, 105 S.Ct. at 1495):

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

That skeletal set of pre-deprivation procedures was deemed adequate in light of the employee's right to "a full post-termination hearing" (*id.* at 1496).

Surely Jones had no *greater* entitlement than that defined in *Loudermill*. In terms of the interest occupying the employee's side of the balance, Jones' potential suspension was by definition a much lesser stake than the outright firing suffered by Loudermill. And as for the other scale of the balance, Board's interest in immediate suspension of teachers who use excessive physical force (to avoid any possible recurrence, among other things) is at least as important as the Cleveland Board of Education's interest in ridding itself of a dis-

honest security guard.[5] Finally, just as in *Loudermill* Jones received a post-deprivation hearing.

■ Of what then does Jones complain? He does not dispute that before his suspension he received notice of the charges against him, an explanation of those charges and an opportunity to present his side of the story. Nevertheless he argues Board's pre-deprivation procedures were inadequate under *Loudermill* and under Section 24–12. For that purpose he makes a variety of assertions as to the exact circumstances of what occurred before his suspension.[6] But even assuming all those factual disputes would be resolved in Jones' favor at trial, they would fail to establish a violation of his rights as defined by *Loudermill.*

In brief, Jones claims on that score (Jones Aff. ¶¶ 6–10):

1. He did not actually meet with Garber until the morning of February 10 and was suspended by Kolze that same afternoon.

2. He made his written statement several days earlier, not to Garber but to the Athletic Director.

3. He did not see the statements of the student-witnesses or know the charges against him at the time he made his written statement.

Those "facts" are simply not material to Jones' due process rights. What *is* material is rather that Jones did meet with Garber and had an opportunity to explain his action *before* he was suspended—and *those* facts are uncontroverted.

In terms of materiality, Jones fails to suggest how a meeting on February 10 instead of an earlier date could have impaired his due process rights (see *Boals v. Gray,* 775 F.2d 686, 690–91 (6th Cir.1985)).[7] Nor were such rights impacted by Jones' having made an earlier written statement (simply Jones' version of what happened in his class). Such statements are, of course, generally more accurate when given as soon as possible after the event.[8] Jones had a full opportunity to explain his actions at the meeting with Garber, when he had been accorded knowledge of the charges and evidence against him. Finally, Jones' due process rights were not impinged upon by Garber's failure to provide him with the actual written statements of the student-

---

**5.** Jones makes much of his having disputed both the propriety of his suspension and the underlying facts of the incident. Such matters are not generally material to procedural due process questions, where the procedures used rather than the decision reached are at issue. There may, however, be a sense in which such factual disputes could arguably be relevant. Although Jones failed to make this argument, Justice Brennan's concurrence in *Loudermill,* 105 S.Ct. at 1499 suggested more pre-deprivation procedures might be required where the factual predicate for employee discipline was controverted. But on balance the consideration suggested by Justice Brennan would be more than offset by the lesser property interest Jones had at stake in this case and by the disparity between that interest and Board's.

**6.** Jones failed to file a "concise statement of genuine issues" as required by this District Court's General Rule 12(f). Defendants urge that failure calls for all the matters described as non-disputed facts in defendants' General Rule 12(e) statement to be deemed admitted. Though this Court does not mean to encourage any noncompliance with court rules, it remains true that the first section of Jones' supporting memorandum of law serves much the same purpose as the General Rule 12(f) statement. It

would be too severe a sanction to default Jones in factual terms for his not having filed a clearly-labeled separate statement.

**7.** Jones claims this Court should infer Kolze did not actually consider Jones' explanation, because Jones met with Garber the morning of February 10 and Kolze decided to suspend Jones that same afternoon. Although such an inference would indeed call into question whether Jones had a meaningful opportunity to be heard, it is impermissible to draw the inference, because it would contradict Kolze's statement under oath that he *did* review Jones' own statements as part of the evidence Garber had gathered (Kolze Aff. ¶ 5). Rule 56 doctrine does not permit such an attenuated factual inference as Jones urges, in the face of a direct sworn statement to the contrary.

**8.** Indeed, during the early interview Jones provided the names of additional student witnesses, who were then interviewed by Garber or the Assistant Principal (Garber Aff. ¶ 12). That approach to the investigation was surely reasonable and, again, does not implicate any due process violation.

witnesses before his suspension. *Louder-mill* required only that Garber explain the evidence against Jones to him—as he unquestionably did (see the post-*Loudermill* decision in *Leftwich v. Bevilacqua*, 635 F.Supp. 238, 241 (W.D.Va.1986)).

Jones' other contention as to his pre-deprivation due process rights, that based on Section 24–12, is really a non-issue for two reasons:

    1.  Section 24–12's state-prescribed procedures are not a measure of Due Process Clause rights.

    2.  Jones was not entitled to those procedures anyway, even under Illinois law.

Each reason requires only brief discussion.

Section 24–12 imposes stringent procedural requirements on school boards when removing or dismissing a tenured teacher. Jones urges those state law procedures, even though (or perhaps because) they are more extensive than the Due Process Clause requires, nevertheless define his entitlement as a matter of federal constitutional law. For that novel proposition Jones mistakenly cites *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) and *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C.Cir.1977)—but each of those was a federal regulatory, and not a due process, case.[9]

■ Of course state law cannot authorize the deprivation of an interest protected by the Due Process Clause without the minimal procedural requirements imposed by that same clause. *Loudermill*, 105 S.Ct. at 1493. It is simply a non sequitur, however, to view stricter state law procedures as a ratchet tightening the Due Process Clause. Any such state procedural requirements remain only that, not independently cognizable in a Section 1983 lawsuit. What Jones' counsel has done (as did the Colorado Supreme Court in the other case on which Jones relies, *Department of Health v. Donahue*, 690 P.2d 243, 249 (Colo.1984)) is to confuse the conclusive role state law plays in defining substantive property interests with the absence of any role state law plays in defining the procedural due process protections against deprivations of those property interests. *Loudermill*, 105 S.Ct. at 1491–93.

■ But even on his own terms, Jones' state law rights were not in fact violated by Board's actions. *Kearns v. Board of Education of North Palos Elementary School District*, 73 Ill.App.3d 907, 29 Ill. Dec. 591, 392 N.E.2d 148 (1st Dist.1979) squarely decided Section 24–12's procedures (which speak only of the "removal or dismissal" of teachers) do not apply to temporary suspension of teachers. Because of the First Appellate District matrix of this case, the contrary decision of the Third Appellate District in *Craddock*[10] does not control here.[11]

■ In sum, Jones received all the pre-deprivation procedure he was due under federal law—and, though irrelevant in Section 1983 terms, under state law as well. This opinion turns then to the post-deprivation issue.

9. *Mazaleski* analyzed the federal government employee's due process rights to see whether they accorded the employee *more* protection than the regulations (they did not, *id.* at 709–15), then turned to whether the regulations had been complied with (they had not, *id.* at 717–19). Nothing in the analysis provides Jones any comfort here.

10. *Craddock* was affirmed by the Illinois Supreme Court because the defendant school board did not actually have a suspension policy. Thus the Supreme Court avoided the question whether a school board must follow Section 24–12 when suspending a tenured teacher. 81 Ill.2d at 31, 39 Ill.Dec. at 817, 405 N.E.2d at 796.

11. This Court's numerous opinions on the application of *Erie v. Tompkins* principles where there is a division of views among Illinois Appellate Districts (see, e.g., *Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193, 195, 196–200 (N.D.Ill.1983) and, most recently, *Rizzo v. Means Services, Inc.*, 632 F.Supp. 1115, 1131–33 (N.D.Ill.1986)) explain why the First District's views control under the *Thorpe-Garcia* mandate referred to in those opinions: Jones and Kolze are residents of, and the School District and hence Board are located in, Cook County.

### Post-Deprivation Procedures

Shortly after his suspension Jones received a trial-like evidentiary hearing at his request (Kolze Aff. Ex. C). Nevertheless Jones attacks that hearing as insufficient in due process terms.[12] *Carter*, 767 F.2d at 273 recently examined the due-process-required post-deprivation procedures in an employee termination case:

> Where, as here, a court has approved an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more "meaningful." At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him.

Surely Jones, suffering only a temporary suspension, cannot claim *greater* due process rights than a fired employee. And it is unnecessary to decide whether the *Mathews* balancing approach might arguably entitle Jones to *less*, for defendants in fact gave him everything prescribed by *Carter*.

Jones contends his due process rights were violated because he had inadequate notice of the charges and evidence against him and because his hearing was not conducted by an "apparently impartial tribunal." Both arguments fail, even when Jones' version of the hearing is accepted as correct.

On the notice issue, Kolze's February 10 letter to Jones (Kolze Aff. Ex. B) clearly and extensively outlined the reason for his suspension. Nor does the failure to give Jones copies of the student-witnesses' statements before (rather than at) the hearing even arguably violate due process.[13] Some two weeks before the hearing Jones had been given a list of the students who had been interviewed by the Assistant Principal (Kolze Aff. Ex. D), so he could have talked to any of them before the hearing. And conclusively in due process terms, Jones was furnished copies of the statements at the hearing, and his attorney used them when cross-examining the students.[14]

As for the hearing officer issue, Jones' request for a formal hearing on his suspension did include a request for an out-of-district hearing officer (Kolze Aff. Ex. C). Because the Policy required Kolze to appoint another uninvolved principal or administrator from District No. 211 as the hearing officer, Kolze appointed Mueller (an administrator who had no employment connection with Jones or knowledge of the reasons for his suspension, Mueller Aff. ¶ 3) to fill that role. As already stated, Mueller did not make the actual decision to affirm Kolze's action. In accordance with the Policy, he presided at the hearing and submitted a summary of the hearing evidence to Board.

Jones claims both Mueller and the Board (whichever is considered the "tribunal") were not neutral, so it was constitutionally improper for either or both to review Kolze's decision. Jones also urges it was

---

**12.** Jones assumes he was entitled to such a trial-like hearing as a matter of law, citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488 (7th Cir.1972). Neither case stands for the proposition that the Due Process Clause mandates a full-blown post-deprivation evidentiary hearing for every individual deprived of a protected interest. Due process is a fluid concept for post- as well as pre-deprivation procedures, and Jones' entitlement depends on a balancing of the *Mathews* factors.

**13.** It may be noted parenthetically that Jones offers no evidence of his having actually requested those statements. Even if he had, however, the text analysis remains valid.

**14.** Apparently Jones would have it Congress acted unconstitutionally in enacting 18 U.S.C. § 3500 (the "Jencks Act," named after the Supreme Court decision it overruled legislatively, *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957)). Under the Jencks Act the government must produce statements by its witnesses in criminal prosecutions *only* after the witnesses have testified on direct examination. Its constitutionality has universally been upheld. Jones' due process rights can scarcely exceed those of a criminal defendant, who clearly has much more at risk.

improper for Board to base its decision on Mueller's report.

Jones provides no factual basis whatever for his claim that Mueller and Board were biased against him. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) established "a presumption of honesty and integrity in those serving as adjudicators." [15] Jones has failed to raise a genuine issue of fact such as to disturb that presumption. Mueller's position as an employee of Board and Board's position as Kolze's employer do not of themselves reasonably create an inference of bias. Indeed, *Hortonville Joint School District v. Hortonville Education Association,* 426 U.S. 482, 491–94, 96 S.Ct. 2308, 2313–15, 49 L.Ed.2d 1 (1976) upheld summary judgment against a due process challenge to a school board's role as decisionmaker in what was really an a fortiori situation to this case. [16]

Finally, Jones fails to advance any facts that create any constitutional doubts as to Board's use of Mueller's report as the basis for its decision. No reason exists to inhibit Board's delegation to Mueller of the hearing's conduct, or to preclude its reliance on Mueller's factual summary in making its decision, so long as that process did not deprive Jones of a meaningful hearing. Jones does not claim Mueller's report was in any way inaccurate or misleading, nor does he assert Board did not actually read the report. Jones' due process rights were not compromised by that procedure or by any of the other procedures used by Board or Kolze.

All of Jones' Section 1983 arguments have been canvassed and found wanting. Defendants are entitled to dismissal of that claim.

*Jones' State Law Claim*

All that remains of Jones' lawsuit is his challenge to the Policy based on Section 24–12 and the Illinois Constitution. Defendants seek dismissal on alternative grounds:

1. They say the claim is barred by the Eleventh Amendment.

2. They contend the claim poses an important unresolved state law issue, calling for a discretionary declination of pendent jurisdiction.

■ Defendants' Eleventh Amendment argument is totally misguided. Even apart from the dubious (though well-settled) notion that the Eleventh Amendment somehow bars a citizen from suing his own state in federal courts,[17] that bar clearly does not extend to counties or other political subdivisions. *Moor v. County of Alameda,* 411 U.S. 693, 717–21, 93 S.Ct. 1785, 1799–1802, 36 L.Ed.2d 596 (1973). Thus *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977) held (under Ohio law) a school board was more like a political subdivision than a state agency. That reasoning applies with equal force to the Illinois situation. Board is a separate political body, established under Ill.Rev. Stat. ch. 122, ¶ 10–10 and possessing a full panoply of governmental powers. It is not immune from suit under the Eleventh Amendment.

■ This case does, however, call for the nonexercise of discretionary pendent jurisdiction over Jones' state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). No federal claim remains to

---

**15.** That presumption arises unless because of the situation "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable" (*id.*), such as, for example, when the adjudicator "has a pecuniary interest in the outcome [or] has been the target of personal abuse or criticism from the party before him" (*id.*).

**16.** In *Hortonville* the teachers were fired by the school board for striking. That same school

board had been the negotiator with the teachers in the unsuccessful collective bargaining that caused the strike. *Hortonville, id.,* 426 U.S. at 497, 96 S.Ct. at 2316 specifically held the board's involvement did not overcome the *Withrow* presumption.

**17.** See this Court's opinion in *Rubacha v. Coler,* 607 F.Supp. 477, 480 & n. 6 (N.D.Ill.1985).

which the state law claim can attach, and that claim involves an important question of state law not yet addressed by the Illinois Supreme Court (see *Craddock,* 81 Ill.2d at 31, 39 Ill.Dec. at 817, 405 N.E.2d at 796). Accordingly Jones' state law claim is therefore dismissed for lack of subject matter jurisdiction—and thus without prejudice.

### *Conclusion*

There is no dispute as to any fact material to the issue of Jones' federal due process rights. Those undisputed facts establish Jones received all the procedural protection the Due Process Clause requires. Defendants are therefore entitled to a judgment as a matter of law on Jones' Section 1983 claim, which is dismissed with prejudice. Jones' pendent state law claim is also dismissed, but solely for lack of subject matter jurisdiction and hence without prejudice to its reassertion in a state court of competent jurisdiction.